IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO, et al. | : | CIVIL ACTION |
| v. | : | |
| HOLT MARINE TERMINAL, INC., et al. | : | NO. 02-7825 |

MEMORANDUM

McLaughlin, J.                                                         April 14, 2011

        The plaintiffs in this action seek to recover withdrawal liability incurred by a bankrupt shipping company, NPR, Inc. ("NPR"), under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980 (the "MPPAA"), 29 U.S.C. § 1381 *et. seq.* The plaintiffs are two entities that were secondarily liable for NPR's withdrawal liability, and which paid over $14 million to a pension fund in satisfaction of NPR's withdrawal liability. The plaintiffs assert claims against NPR's corporate affiliates and their individual owners under various theories, including "common control," veil piercing and alter ego liability.

        The defendants fall into two groups. The first consists of individual defendant Thomas Holt, Sr. ("Holt Sr.") and his wholly-owned company, Orchard Hill Development Corporation ("Orchard Hill"). The second comprises the three

sons of Thomas Holt, Sr. - Michael, Leo and Thomas, Jr. - ("the Holt Sons") and ten companies they control ("the Holt Sons Companies").  Presently before the Court are cross-motions for summary judgment between the plaintiffs and defendants Orchard Hill and Holt Sr.  For the reasons that follow, the Court will deny the plaintiffs' motion for summary judgment.  The Court will grant in part and deny in part the motion for summary judgment of defendants Orchard Hill and Holt Sr.

I.  Procedural History

The plaintiffs filed their original complaint on October 10, 2002, seeking to recover withdrawal liability from NPR's corporate affiliates on the basis that those entities were members of NPR's "controlled group," pursuant to 29 U.S.C. § 1301(b).  With leave from the Court, the plaintiffs filed an amended complaint on September 20, 2004, adding additional defendants, including Holt Sr.  The plaintiffs also added supplemental theories of liability based on alter ego and veil piercing.

On October 23, 2003, the plaintiffs filed a motion for summary judgment against defendant Orchard Hill, arguing that Orchard Hill was responsible for NPR's withdrawal liability as a trade or business under common control with NPR.  In a Memorandum and Order dated September 14, 2004, the Court denied the motion,

because the record contained no evidence on the question of Orchard Hill's activities during the relevant time when it was under common control with NPR.

On November 15, 2006, the plaintiffs filed a renewed motion for summary judgment against defendants Orchard Hill and Holt Sr. In the renewed motion, the plaintiffs argue that the now-complete record compels the conclusion that Orchard Hill was a trade or business under common control with NPR. The plaintiffs also argue that the Court should grant summary judgment on their claim to pierce the corporate veil of Orchard Hill and impose liability on Holt Sr.

On the same date, defendants Orchard Hill and Holt Sr. filed a motion for summary judgment. The defendants do not move for summary judgment on the plaintiffs' "controlled group" claim or the claim to pierce Orchard Hill's corporate veil. Instead, the defendants move for summary judgment on the following claims: (1) whether Holt Sr. operated a sole proprietorship that constituted a trade or business under common control with NPR; (2) whether NPR's corporate veil should be pierced to hold Holt Sr. individually responsible for NPR's withdrawal liability; and (3) whether Orchard Hill should be responsible for NPR's withdrawal liability as an alter ego of NPR. The Court will deny the plaintiffs' motion, and will grant in part and deny in part the defendants' motion.

3

II. <u>Summary Judgment Record</u>[1]

The plaintiffs are the Government Development Bank for Puerto Rico ("GDB") and the Puerto Rico Maritime Shipping Authority ("PRMSA"). Prior to 1995, the PRMSA was engaged in the shipping business. In its shipping operations, the PRMSA utilized longshoremen services at the Port of Elizabeth, New Jersey, and became obligated to pay into the New York Shipping Association - International Longshoreman's Association Pension Trust Fund (the "Fund"), a multi-employer pension plan subject to the withdrawal liability provisions of ERISA. Am. Compl. ¶¶ 13, 15; Holt Sons Mem. of Law in Support of the Mot. for Summ. J. ("Holt Sons S.J. Br."), at 4.

In February 1995, the PRMSA sold its assets to NPR, a private shipping company. Although NPR made payments to the Fund, the PRMSA remained secondarily liable in the event that NPR partially or fully withdrew from the Fund within five years of the sale. Am. Compl. ¶¶ 16-17; Dep. of Delfina Betancourt ("Betancourt Dep."), Ex. 17 to Holt Sons S.J. Br., at 30; <u>see also</u> 29 U.S.C. § 1384.

The PRMSA's transfer of assets to NPR required the

---

[1] For a more thorough discussion of the background in this case, see the Court's Memorandum and Order dated March 24, 2011, granting the Holt Sons' motion for summary judgment. For an additional discussion of the facts relating to Orchard Hill, see the Court's Memorandum and Order dated September 14, 2004, denying the plaintiffs' original motion for summary judgment.

4

approval of the Puerto Rican legislature.  As a condition of that approval, the Puerto Rican legislature required the GDB to guarantee the PRMSA's existing liabilities.  In April 1997, the GDR and the PRMSA entered into a settlement agreement with NPR and the Fund.  In the agreement, NPR agreed that it would be primarily liable for any withdrawal liability arising after the transfer; and GDB and the PRMSA agreed that, in the event that NPR became subject to withdrawal liability and failed to pay, they would be jointly and severally liable for any unpaid liability up to a specified amount.  Betancourt Dep. at 28; April 23, 1997, Settlement Agreement, Ex. A. to the Aff. of Patrick M. Northen Esq. ("Northen Aff."), Ex. 4 to Holt Sons S.J. Br.

On September 25, 1997, NPR was purchased by Holt Cargo Systems, Inc. ("Holt Cargo"), a company owned by defendant Holt Sr.  On November 20, 1997, Holt Cargo assigned its ownership in NPR to the Holt Group, Inc. ("Holt Group"), a holding company. From November 20, 1997, until NPR's liquidation in 2002, the Holt Group owned 100% of the stock of NPR, and Holt Sr. owned 100% of the stock of the Holt Group.  Stock Purchase Agreement between NPR and Holt Cargo, Ex. A to the Aff. of Lisa A. Kline, Esq. ("Kline Aff."), Ex. 5 to Holt Sons S.J. Br.; Assignment Agreement between Holt Cargo and The Holt Group, Ex. B to Kline Aff; September 10, 2003, Dep. of Holt, Sr. ("9/10/03 Holt Sr. Dep."), Ex. 18 to Holt Sons S.J. Br., at 49-50; Betancourt Dep. at 68-69.

5

On December 31, 2000, NPR partially withdrew from the Fund. On February 23, 2001, NPR ceased all operations at the Port of Elizabeth and completely withdrew from the Fund. The Fund notified NPR that its actions had incurred withdrawal liability under ERISA and the MPPAA, but NPR failed to pay. On March 21, 2001, NPR, along with other Holt Group companies, filed for bankruptcy. Am. Compl. ¶¶ 18-19, 59; Pls.' Opp'n to the Holt Sons S.J. Br. at 5; Holt Sons S.J. Br. at 7; <u>see also</u> the Court's Memorandum and Order of Sept. 14, 2004, at 2-3.

On November 29, 2001, the Fund and the plaintiffs, who were secondarily liable for NPR's withdrawal liability, reached a settlement. Under the settlement the plaintiffs paid the Fund over $14,000,000 to satisfy NPR's withdrawal liability and the Fund assigned to the plaintiffs its rights to collect withdrawal liability from NPR and its affiliates. Am. Compl. ¶ 20; Settlement Agreement and Joint Release, Ex. B to Northen Aff.

Orchard Hill is a Pennsylvania corporation that was involved in the real estate and construction business. At the time the Holt Group purchased NPR in 1997, Orchard Hill was owned by the Holt Sons, who owned Orchard Hill from February 1, 1993, until August 1, 2000. Since August 1, 2000, Holt Sr. has held 100% of the stock in Orchard Hill. September 3, 2003, Dep. of Holt Sr. ("9/3/03 Holt Sr. Dep."), Ex. A to Defs. Orchard Hill and Holt Sr.'s Mem. of Law in Support of the Mot. for Summ. J.

("Orchard Hill S.J. Br."), at 91, 143; see also the Court's Memorandum and Order of Sept. 14, 2004, at 3-4.

Holt Sr. testified that Orchard Hill has been dormant since he acquired it in August 2000. However, the plaintiffs dispute this fact, as will be discussed below. One of Orchard Hill's last construction projects was the "Kaighn Point Project." The record is unclear on the timing of the Kaighn Point Project, but Orchard Hill was unable to finish the project due to financial difficulties. At some point, Holt Hauling and Warehousing, another company owned by Holt Sr., took over the Kaighn Point Project. September 10, 2003, Dep. of Holt Sr. ("9/10/03 Holt Sr. Dep"), Ex. B to Orchard Hill S.J. Br., at 191, 198-99.

On October 10, 2002, the plaintiffs filed this suit, seeking to recover NPR's withdrawal liability from the defendants, including Orchard Hill.

III. Analysis[2]

The cross-motions for summary judgment raise overlapping but distinct issues. The Court first addresses the plaintiffs' renewed motion for summary judgment, which will be denied for the reasons stated below. The Court will then turn to defendants Orchard Hill and Holt Sr.'s motion, which will be granted in part and denied in part.

A. The Plaintiffs' Renewed Motion for Summary Judgment

The plaintiffs move for summary judgment on two issues: (1) whether Orchard Hill was a trade or business under common control with NPR; and (2) whether the corporate veil of Orchard Hill should be pierced to impose liability on Holt Sr.

1. Trade or Business under Common Control

Under ERISA and the MPPAA, withdrawal liability is imposed on an "employer" upon a full or partial withdrawal from a

---

[2]On a motion for summary judgment, the Court considers the evidence in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A party moving for summary judgment must show that there are no issues of material fact and that judgment is appropriate as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that there are no issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 250.

8

multi-employer pension plan.  29 U.S.C. § 1381(a).  The applicable definition section extends an employer's withdrawal liability to all "trades or businesses (whether or not incorporated) which are under common control" with the withdrawing employer.  29 U.S.C. § 1301(b)(1).  Therefore, any entity that is (1) a "trade or business" and (2) under "common control" with the withdrawing employer is jointly and severally liable for withdrawal liability.

The parties do not dispute that Orchard Hill was under "common control" with NPR once Holt Sr. acquired Orchard Hill in August 2000.  Instead, the parties dispute whether Orchard Hill was a "trade or business" under 29 U.S.C. § 1301(b) at the time of NPR's withdrawal.  Section 1301(b) does not define "trade or business," but states that its terms shall be "consistent and coextensive" with regulations prescribed for similar purposes under § 414(c) of the Internal Revenue Code.  Id. § 1301(b).  The Internal Revenue Code, however, does not contain a general definition for "trade or business."  Comm'r of Internal Revenue v. Groetzinger, 480 U.S. 23, 27 (1987).

Courts have turned to the Supreme Court's definition of trade or business in Groetzinger when interpreting the term as it appears in § 1301(b).  See, e.g., Central States, SE and SW Areas Pension Fund v. Neiman, 285 F.3d 587, 594 (7th Cir. 2002); Nat'l Pension Plan of the UNITE HERE Workers Pension Fund v. Swan

9

Finishing Co., 2006 U.S. Dist. LEXIS 28281, at *9 (S.D.N.Y. May 10, 2006). In Groetzinger, the Supreme Court held that to be engaged in a "trade or business," a taxpayer must be involved in the activity: (1) with continuity and regularity; and (2) for the primary purpose of income or profit. Groetzinger, 480 U.S. at 35.

Courts have not, however, applied Groetzinger rigidly. Instead, courts have undertaken a factual inquiry to determine whether characterizing an entity as a "trade or business" will fulfill the underlying purpose of the MPPAA: to prevent employers from avoiding withdrawal liability by fractionalizing their operations. See, e.g. Central States, SE and SW Areas Pension Fund v. White, 258 F.3d 636, 644 (7th Cir. 2001); Connors v. Incoal, Inc., 995 F.2d 245, 250 (D.C. Cir. 1993).

The plaintiffs point to Orchard Hill's financial statements from the years 2000 and 2001 to argue that Orchard Hill was a trade or business engaged in continuous and regular activity after it was acquired by Holt Sr. Orchard Hill's December 31, 2000, financial statement shows an entry of $248,089 for "construction in progress," and an entry of $34,454 for "loss from operations." The plaintiffs also cite to journal entries from Delaware Avenue Enterprises, Inc. ("DAE"), a Holt Sons company, which reflect a payable owed to Orchard Hill in the amount of $667,000 on December 31, 2000, and a receivable due

10

from Orchard Hill in the amount of $1,861,091 on December 31, 2001.[3] The plaintiffs contend that these undisputed facts establish that Orchard Hill was an active trade or business during the relevant period of time. December 31, 2001 Orchard Hill Financial Statement, Ex. 3 to the Pls.' Mem. of Law in Support of Renewed Mot. for Summ. J. ("Pls.' S.J. Br."), at D21384-5; December 31, 2001 DAE Journal Entry, Ex. 4 to the Pls.' S.J. Br., at D21080.

The Court cannot grant summary judgment to the plaintiffs because there exist disputed issues of material fact. Holt Sr. testified that Orchard Hill "went dormant in 2000." The defendants submitted the affidavit of John Whiteley, an accountant, who stated that the "construction in progress" entry relied on by the plaintiffs represented transactions that had occurred in 1997 and 1998, rather than new transactions. Mr. Whiteley also testified that the payables and receivables reflected in DAE's journal entries did not represent actual transactions, but were instead a component of the cash management

---

[3]The plaintiffs cite to additional entries in Orchard Hill's financial statements, including certain "administrative expenses." The plaintiffs also cite to the testimony of Holt Sr., who explained that he acquired Orchard Hill from his sons because his sons no longer wanted to be involved in the marine construction business. September 3, 2003 Dep. of Holt Sr. ("9/3/03 Holt Sr. Dep."), Ex. 16 to the Pls.' S.J. Br., at 144.

11

system operated by defendant SLS.[4] The Court also notes that the DAE journal entries on which the plaintiffs rely bear a notation indicating that "OHD [Orchard Hill] is no longer in operation." 9/10/03 Holt Sr. Dep. at 191; Aff. of John F. Whiteley ("Whiteley Aff."), Ex. D to the Defs.' Opp'n to the Pls.' Mot. for S.J. ("Defs.' Opp'n"), ¶¶ 4-5; December 31, 2001 DAE Journal Entry, Ex. 4 to the Pls.' S.J. Br., at D21080, D21086.

Based on these disputed facts, reasonable jurors could differ on the question of whether Orchard Hill was an active trade or business at the time NPR incurred withdrawal liability. The Court is therefore unable to grant summary judgment to the plaintiffs on their "controlled group" claim against Orchard Hill.

### 2. Piercing the Corporate Veil of Orchard Hill

The plaintiffs argue that Orchard Hill's corporate veil should be pierced to hold Holt Sr. individually liable for NPR's withdrawal liability. Piercing the corporate veil, however, imposes indirect, or vicarious, liability on an individual for another entity's debts. See Brown v. Astro Holdings, Inc., 385 F. Supp. 2d 519, 525 (E.D. Pa. 2005) (citations omitted). The plaintiffs' veil piercing claim is therefore dependent on its

---

[4]For a discussion of the cash management system and the role of SLS in operating said system, see the Court's Memorandum and Order dated March 24, 2011.

"controlled group" claim against Orchard Hill. Because disputed issues of material fact exist as to the plaintiffs' "controlled group" claim, the Court cannot grant summary judgment as to the plaintiffs' veil piercing claims. Accordingly, the Court will deny the plaintiffs' renewed motion for summary judgment.

B. Defendants Orchard Hill and Holt Sr.'s Motion for Summary Judgment

The defendants have moved for summary judgment on three claims: (1) whether Holt Sr. operated a sole proprietorship that constituted a trade or business under common control with NPR; (2) whether NPR's corporate veil should be pierced to hold Holt Sr. individually responsible for the withdrawal liability; and (3) whether Orchard Hill should be responsible for NPR's withdrawal liability as an alter ego of NPR.

1. Whether Holt Sr. Operated a Sole Proprietorship

The common control provisions under § 1301(b) explicitly do not apply to individuals, but only to "trades or businesses." 29 U.S.C. § 1301(b); Brown v. Astro Holdings, Inc., 385 F. Supp. 2d 519, 533 & n.9 (E.D. Pa. 2005). It follows that individuals are not responsible for withdrawal liability simply by virtue of their position as controlling shareholders of a withdrawing employer. See, e.g., Central States, SE and SW Areas Pension Fund v. White, 258 F.3d 636, 640 & n.3 (7th Cir. 2001).

13

In certain circumstances, however, an individual may engage in economic activities that are deemed to constitute a trade or business, and that trade or business may in turn be subject to withdrawal liability if it is under common control with the withdrawing employer. See Central States, SE and SW Areas Pension Fund v. Fulkerson, 238 F.3d 891, 895 (7th Cir. 2001).

To determine whether a person's informal economic activities constitute a trade or business, courts apply the Groetzinger test discussed above. Courts also consider whether recognizing certain activities as a trade or business would further the underlying policies of the MPPAA. See, e.g., Fulkerson, 238 F.3d at 895; Connors, 995 F.2d at 250-51.

The plaintiffs argue that Holt Sr. operated a sole proprietorship that constituted a trade or business under common control[5] with NPR. The plaintiffs contend that Holt Sr. was in the business of making loans, as evidenced by the fact that Holt Sr. made loans totaling $7 million to three companies in 1998, which were drawn from his personal checking account.[6] Holt Sr. charged 10.75% annual interest on the loans, and collected monthly interest payments over the course of several years. The

---

[5]The parties do not dispute whether Holt Sr.'s sole proprietorship would be under common control with NPR. Instead, they dispute whether Holt Sr.'s activities constituted a trade or business.

[6]The three companies are: Gloucester Refrigerated Warehouse, Dockside Refrigerated Warehouse, and Trans Ocean Maritime.

14

plaintiffs contend that these facts establish regular and continuous activities with the primary purpose of generating income. Exs. 78-79 to App. C to the Pls.' Br. in Opp'n to the Holt Sons S.J. Br., at NR003365; NR003384-85; NR003408; NR003437.

The defendants have moved for summary judgment on this claim. The defendants contend that, as a matter of law, the fact that Holt Sr. made three loans on a single day in 1998 does not represent sufficiently continuous or regular activity to constitute a trade or business, and instead should be regarded as a passive investment.

The Court is not convinced that the provision of three loans in 1998 is sufficiently continuous and regular to constitute a trade or business. Although Holt Sr. collected monthly interest on those loans, interest payments are a normal component of a passive investment. In distinguishing between passive investments and conduct that constitutes a trade or business, courts focus on activities taken with respect to a particular property or holding, rather than the holding of the property itself. Courts have noted that the mere possession of property, "be it stocks, commodities, leases, or something else, without more is the hallmark of an investment." Fulkerson, 238 F.3d at 895.

The record contains no evidence to suggest that Holt Sr. undertook any activities with respect to these loans, or made

15

additional loans beyond the three identified in 1998. The Court is therefore not persuaded that these loans were more than a passive investment. The Court cannot, however, grant summary judgment on this claim, because there exist disputed issues of fact over whether Holt Sr. performed management and consulting services that could be regarded as a trade or business.

The record contains Holt Sr.'s 1999 federal income tax return, which listed an amount of $843,234 for "Other Income," of which $839,000 was attributed to "Mgt. and Misc." income. Additionally, in his 1999 Pennsylvania state tax return, Holt Sr. filed a "Schedule C" form for profit or loss from a sole proprietorship, in which Holt Sr. described his main business activity as "Management Fees."[7] Holt Sr. subsequently filed an amended 1999 federal income tax return on June 10, 2002, after NPR withdrew from the Fund. In his amended return, Holt Sr. replaced the $843,234 figure with a revised amount of $4,234. Holt Sr.'s accountant explained that the "Other Income" figure originally listed on the 1999 federal tax return came from the Holt Group, and did not come from other entities. Original 1999 Federal Income Tax Return, Ex. C to Orchard Hill S.J. Br.; Amended 1999 Federal Income Tax Return, Ex. D to Orchard Hill S.J. Br.; August 8, 2006 Dep. of Joseph. P. Waddington, Ex. E to

---

[7]Holt Sr. also listed income labeled as "Mgt. and Misc." on his 1997 and 1998 federal income tax returns.

16

Orchard Hill S.J. Br., at 201-02.

Although the plaintiffs have not presented an argument to the Court on these facts, the Court concludes that these facts are sufficient to preclude summary judgment for the defendants. Courts have deemed an individual's management and consulting activities to constitute a trade or business for purposes of § 1301(b) when they are undertaken with sufficient continuity and regularity. Factors relevant to this inquiry include whether the individual in question collects regular "management fees," whether the individual deducts business expenses, and whether the individual files a Schedule C. See, e.g., Neiman, 285 F.3d at 595. The record suggests the possibility that Holt Sr. was engaged in management or consulting services. Although Holt Sr. submitted an amended tax return, the defendants' explanation for the amendment is unclear, and the testimony of Mr. Waddington does not clarify the issue. In addition, the timing of the amendment, which was filed after NPR withdrew from the Fund, raises additional questions about the underlying facts. The Court therefore concludes that summary judgment is not appropriate on the question of whether Holt Sr. operated a sole proprietorship that was a trade or business under common control with NPR.

## 2. Alter Ego and Veil Piercing Claims

The plaintiffs assert two additional claims against Orchard Hill and Holt Sr. The plaintiffs argue that Orchard Hill should be directly liable for NPR's withdrawal liability as its alter ego. The plaintiffs also urge the Court to pierce the corporate veil of NPR and impose NPR's withdrawal liability on Holt Sr.

The Court will grant summary judgment to the defendants on the alter ego and veil piercing claims. The Court notes that the plaintiffs have offered no argument with respect to these claims. An alter ego claim under the MPPAA is governed by the limitations set forth in Brown v. Astro Holdings, Inc., 385 F. Supp. 2d 519 (E.D. Pa. 2005), which were discussed more fully in this Court's Memorandum and Order dated March 24, 2011. The Court has conducted an independent review of the record, and concludes that the facts cannot support an inference that Orchard Hill and NPR were alter egos of one another.[8]

With respect to the plaintiffs' veil piercing claim, the plaintiffs must show that the corporate forms of NPR and the Holt Group, NPR's owner, were abused and should be disregarded. Based on the Court's review of the record, it concludes that the facts cannot support an inference that either NPR's or the Holt

---

[8] The Court has considered both the "single employer" test and the federal common law test, as discussed in the Court's Memorandum and Order dated March 24, 2011.

Group's corporate form was abused, under the factors set forth in Trustees of the Nat'l Elevator Ind. Pension, Health Benefit and Educ. Funds v. Lutyk, 332 F.3d 188 (3d Cir. 2003).

Accordingly, the Court will grant the defendants' motion for summary judgment on the plaintiffs' veil piercing claim involving NPR and the Holt Group, and on the plaintiffs' alter ego claim against Orchard Hill.

IV. Conclusion

For the foregoing reasons, the Court will deny the plaintiffs' renewed motion for summary judgment. The Court will grant in part and deny in part defendant Orchard Hill and Holt Sr.'s motion for summary judgment.

An appropriate order shall issue separately.